IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRAIG BARNARD, TERESA BARNARD,
and BRADY BARNARD

    Plaintiffs,

v.

3:17-CV-1340-PK

FINDINGS AND
RECOMMENDATION

STATE FARM FIRE & CASUALTY
COMPANY,

    Defendant.

PAPAK, Magistrate Judge:

    Plaintiffs Craig Barnard ("Craig"), Teresa Barnard ("Teresa"), and Brady Barnard ("Brady" and, collectively with Craig and Teresa, the "Barnards") filed this action against defendant State Farm Fire & Casualty Company ("State Farm") in the Clackamas County Circuit Court on August 2, 2017. State Farm removed the Barnards' action to this court effective August 28, 2017, on the asserted ground of diversity jurisdiction.

Page 1 - FINDINGS AND RECOMMENDATION

By and through their complaint as filed in state court, the Barnards allege that State Farm provided them with homeowners insurance for their Lake Oswego, Oregon, residence, that in 2014 their residence was damaged by water intrusion, that the damage to their residence was covered under their State Farm homeowners insurance policy, and that State Farm nevertheless refused to cover the costs of the damage. Arising out of the foregoing, the Barnards allege State Farm's liability under Oregon common law (i) for breach of contract and for breach of the implied covenant of fair dealing, in two separate counts, (ii) for tortious interference with business relationships, (iii) for negligence, (iv) for negligent misrepresentation, (v) for intentional misrepresentation, (vi) for bad faith and unfair dealing, (vii) for intentional infliction of emotional distress, and (viii) for conversion. The Barnards seek award of money damages in the amount of either $1,500,000 or $1,000,000 (depending on the specific claim at issue), and for award of their attorney fees and costs. This court has diversity jurisdiction over the Barnards' claims pursuant to 28 U.S.C. § 1332 based on the complete diversity of the parties and the amount in controversy.

Now before the court is State Farm's motion (#3) to dismiss the Barnards' sixth claim for relief only, by and through which the Barnards allege State Farm's liability for bad faith and unfair dealing. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, State Farm's motion (#3) should be denied.

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

Page 2 - FINDINGS AND RECOMMENDATION

it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id., quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 556. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), *citing Iqbal*, 556 U.S. at 678.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v.*

Page 3 - FINDINGS AND RECOMMENDATION

*Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND

### I. The Parties

Plaintiffs Craig and Teresa are a married couple, and plaintiff Brady is their "19-year-old disabled son." The Barnards are all citizens and residents of Oregon. Craig and Teresa own the home (the "insured premises") in Lake Oswego, Oregon, where the Barnards at all material times resided. Craig is employed in the real estate business, and Teresa owns a State Farm insurance agency.

Defendant State Farm is an Illinois corporation headquartered in Illinois. State Farm is engaged in the insurance business. State Farm provided homeowners insurance to the Barnards for the insured premises in Lake Oswego, Oregon.

### II. Material Allegations[1]

State Farm issued a homeowners insurance policy (the "policy") to the Barnards. The policy required State Farm to pay for certain losses suffered by the plaintiffs in connection with structural damage to the insured premises, loss of personal property, and living expenses for periods when damage to the insured premises required the plaintiffs to pay for lodging elsewhere. *See* Complaint, ¶¶ 1, 3-4. On or around August 14, 2015, the failure of an under-sink water heater resulted in water intrusion that caused structural damage to the insured premises and damage to the Barnards' personal property, and required them to pay for lodging elsewhere. *See id.*, ¶¶ 5, 12. The Barnards made a claim under the policy. *See id.*, ¶ 6.

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the allegations of plaintiffs' complaint, of any matters incorporated by reference therein, and of any matters properly subject to judicial notice in the light most favorable to plaintiffs.

Page 4 - FINDINGS AND RECOMMENDATION

Approximately four or five days after the water intrusion occurred, a State Farm claims representative inspected the insured premises. *See id.*, ¶ 12. Explaining that he was "not supposed to do this," and that he would "deny it if it ever comes up," the adjustor retrieved tools from his car and used them to remove the water heater from the premises, thus compromising the key evidence upon which the Barnards would otherwise have relied in the event it became or becomes necessary for them to bring a claim against the heater's manufacturer. *Id.*

State Farm's claims adjustor represented to the Barnards that State Farm "has certain contractors that it recommends," that it "does extensive background checks on all its contractors prior to recommending them," that it "has sufficient confidence in its contractors that [it] provides a guarantee of its contractors' work," and that the Barnards should "promptly select a State Farm contractor." *Id.*, ¶ 25. The Barnards relied on State Farm's "professional expertise" in these matters. *Id.*, ¶ 30; *see also id.*, ¶¶ 33, 38. The Barnards "had a reasonable expectation" based on their professional business relationships with State Farm that State Farm's representations would be "truthful and accurate." *See id.*, ¶ 32. Notwithstanding its representations, State Farm sent "untrained" contractors to the insured premises, and those contractors caused further damage to the Barnards' home. *See id.*, ¶¶ 12, 24-27.

At some point, State Farm determined that water present in the basement was a "second loss" independent of the failure of the water heater. *See id.* State Farm subsequently sent an inspector to the insured premises, and that inspector determined that the water present in the basement was related to the failure of the water heater. *See id.* State Farm rejected its inspector's finding. *See id.*

State Farm's adjustor initially refused the Barnards' request for substitute housing

notwithstanding that the insured premises did not have a working kitchen after the water damage occurred, and notwithstanding that Brady's condition required treatment that would be more difficult to provide if substitute housing were not provided. *See id.*. State Farm ultimately provided substitute housing beginning November 18, 2015. *See id.*

The Barnards hired a contractor to conduct repairs at the insured premises, but State Farm required them to terminate their chosen contractor, advising them that "they would be left holding the bag" if they continued with their chosen contractor. *See id.* State Farm replaced the Barnards' chosen contractor with a person not licensed as a contractor in Oregon. *See id.*

On February 12, 2016, a State Farm representative threatened Teresa with the termination of her State Farm agency in the event the Barnards pursued their claim under the policy. *See id.*

State Farm either failed to pay or underpaid the costs of repair to the insured premises, causing the Barnards to stop all repair work. *See id.*, ¶¶ 6, 12. The Barnards' contractor has opined that the insured premises are a total loss in consequence of the initial water damage and of further deterioration of the condition of the insured premises resulting from delays in effecting repairs and from substandard repair work, and that it will cost approximately $1,600,000 to replace the home with one of similar quality. *See id.*, ¶ 12.

In consequence of the Barnards' expectation that State Farm's representations regarding the contractors it recommended would be accurate, of State Farm's insistence that the Barnards should rely on the services of a State Farm contractor, of State Farm's conduct in requiring the Barnards to terminate the services of their chosen contractor and rely instead on those of a State-Farm-selected contractor, and of the conduct of State Farm's claims adjustor in unilaterally electing to uninstall and remove the failed water heater from the insured premises, it is the

Page 6 - FINDINGS AND RECOMMENDATION

Barnards' position that State Farm "owed to plaintiffs a duty of good faith in claims handling, independent of the policy contract." *Id.*, ¶ 43.

## ANALYSIS

Under Oregon law, an insured's bad faith claim against its insured will not lie in tort but rather sounds in contract, except where the gravamen of the claim is that the insurer acted in bad faith in connection with an extra-contractual duty of care owed to the insured. *See Georgetown Realty v. Home Ins. Co.*, 313 Or. 97, 106, 110-111 (1992); *see also Employers' Fire Ins. Co. v. Love It Ice Cream Co.*, 64 Or. App. 784, 791 (1983). The Oregon courts have found that such an extra-contractual duty may exist where the insurer and the insured are in a "relationship [that] carries with it a standard of care that exists independent of the contract and without reference to the specific terms of the contract," as for example when an insurer undertakes to defend its insured in litigation. *Id.* The focus of the inquiry into whether insurer and insured are in the requisite "special relationship . . . is not on the subject matter of the relationship, such as one party's financial future; nor is it on whether one party, in fact, relinquished control to the other." *Bennett v. Farmers Ins. Co.*, 332 Or. 138, 161-162 (2001).

> The focus instead is on whether the nature of the parties' relationship itself allowed one party to exercise control in the first party's best interests. In other words, the law does not imply a tort duty simply because one party to a business relationship begins to dominate and to control the other party's financial future. Rather, the law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf.

*Id.*

Here, the Barnards have alleged that State Farm represented to them that it "has certain contractors that it recommends," that it "does extensive background checks on all its contractors

Page 7 - FINDINGS AND RECOMMENDATION

prior to recommending them," that it "has sufficient confidence in its contractors that [it] provides a guarantee of its contractors' work," and that the Barnards should "promptly select a State Farm contractor," *see* Complaint, ¶ 25, and that they relied on State Farm's "professional expertise" in these matters, *id.*, ¶ 30, *see also id.*, ¶¶ 33, 38, due to their "reasonable expectation" based on their professional business relationships with State Farm that State Farm's representations would be "truthful and accurate," *id.*, ¶ 32. The Barnards have further alleged that, after State Farm sent contractors with substandard expertise to perform repairs at the insured premises, they temporarily hired their own contractor, following which State Farm required them to terminate their chosen contractor, advising them that "they would be left holding the bag" if they continued with their chosen contractor. *Id.*, ¶ 12. Because State Farm is alleged to have gone beyond merely recommending that the Barnards rely on the services of a particular contractor and to have affirmatively *required* the Barnards to rely on State Farm's judgment regarding choice of contractor rather than upon their own judgment, a finder of fact could reasonably conclude on the basis of the Barnards' allegations (assuming the truth of those allegations and interpreting them in the light most favorable to the Barnards) that State Farm, through its conduct, created a special relationship with the Barnards that carried with it a duty of care independent of State Farm's obligations under the policy. Moreover, the Barnards have alleged that State Farm breached that extra-contractual duty of care. *See id.*, ¶¶ 44, 12. In consequence, State Farm has not established that it is entitled to dismissal of the Barnards' bad faith claim at this pleading stage of these proceedings.

Further support for that conclusion may be found in the Barnards' allegations that State Farm's claims representative, in an act of expressly conceded impropriety, removed from the

insured premises the water heater the failure of which caused the water intrusion at issue, thereby compromising the key evidence which would otherwise have supported a claim against the manufacturer of the heater. *See id.*, ¶ 12. A finder of fact assuming the truth of that obligation and drawing all reasonable inferences therefrom in the Barnards' favor could reasonably conclude that State Farm, by and through its conduct in compromising or eliminating the Barnards' alternative avenue of recourse for seeking compensation for their loss in the event resolution of their claim on the policy proves insufficient to compensate them completely, created a special relationship with the Barnards that carried with it an extra-contractual duty of care to ensure that the insured premises were restored to their pre-loss condition without exceeding the limits of coverage under the policy. Again, the Barnards have alleged that State Farm breached that extra-contractual duty of care. *See id.*, ¶¶ 44, 12. For this reason, also, State Farm has not established that it is entitled to dismissal of the Barnards' bad faith claim at this pleading stage of these proceedings.

## CONCLUSION

For the reasons set forth above, State Farm's motion (#3) to dismiss the Barnards' sixth claim for relief should be denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

/ / /

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 6th day of December, 2017.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge